UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAUL DELGADO,<br>    Plaintiff,<br><br>v.<br><br>LIEUTENANT CONCEPCION and<br>OFFICER CRUZ,<br>    Defendants. | :<br>:<br>:<br>:    Case No. 3:20-cv-787 (SRU)<br>:<br>:<br>:<br>: |

## **INITIAL REVIEW ORDER**

Raul Delgado is a sentenced inmate in the custody of Connecticut's Department of Correction (the "DOC"), and he is currently confined at the Corrigan-Radgowski Correctional Center ("Corrigan"). On June 5, 2020, Delgado, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1. Delgado alleges that two members of the correctional staff at MacDougall-Walker Correctional Institution ("MacDougall-Walker")—Lieutenant Concepcion and Officer Cruz—violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.[1] *See id.* Delgado does not make clear what relief he seeks,[2] but, because he has sued the defendants in their individual capacities,[3] I assume that he seeks money damages.

---

[1] Although Delgado does not mention the Fourth Amendment, I also consider whether Delgado sustained a violation of his Fourth Amendment rights as a result of the strip search that he mentions.

[2] For instance, under the heading "Relief Requested," Delgado seeks "(1) "the defendants action taken by Lieutenant Jamison/Josmon in conducting the Plaintiff disciplinary investigation and; (2) the defendants c/o Cruz writing a false disciplinary report, set a chain of events in motion." Compl., Doc. No. 1, at 10. Lieutenant Jamison/Josmon is not a defendant in this action. (I consider only claims alleged against the defendants listed in the case caption. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); *Thompson v. Hartford Cty. Med. Dep't*, 2020 WL 2198096, at *3 (D. Conn. May 6, 2020)). Further, nowhere in the complaint does Delgado explicitly seek either money or injunctive relief.

[3] Delgado repeatedly asserts that he sues the defendants in their individual capacities. *See* Compl., Doc. No. 1, at 4, 6. Delgado also does not request injunctive relief, and so he will not be prejudiced by my construing his complaint in this way.

For the following reasons, I **dismiss without prejudice** Delgado's claims.  Thus, Delgado may file an amended complaint if he can cure the deficiencies that I note here.

## I.     Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006));  *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    Allegations

On February 23, 2020, while Delgado was housed at MacDougall-Walker, Officer Cruz claimed that Delgado was in possession of drugs and ordered Delgado to show him what was in his pocket.  *See* Compl., Doc. No. 1, at 1.  Delgado showed Officer Cruz four packets of sugar. *See id.*  Delgado said he had nothing else in his pocket and continued on his way.  *See id.* at 2.  A

code was then called, and Delgado was cuffed and sent to the Restricted Housing Unit (the "RHU"). *See id.*

There, Delgado was strip searched. *See id.* The strip search revealed no drugs; instead, it revealed only the four packets of sugar. *See id.* Still, Officer Cruz issued Delgado a disciplinary report for "Interfering with Safety and Security." *See id.* at 2, 19 (copy of the disciplinary report). Delgado believes that Officer Cruz targeted him for no reason. *Id.* at 3. Delgado told Lieutenant Concepcion that "this is wrong," "my rights [are] being violated," and "I'm going to sue you and Officer Cruz for putting me in RHU for no reason." *Id.* at 2.

The next day—February 24—Lieutenant Concepcion conducted an interview with Delgado. *See id.* at 2. Delgado expressed his view that it was wrong to place him in administrative detention for having four packets of sugar. *See id.* The following day—February 25—Lieutenant Concepcion issued Delgado a second disciplinary report. That disciplinary report charged Delgado with making a direct threat to Officer Cruz's safety during the previous day's interview. *See id.* at 1–2, 13 (disciplinary report). However, Delgado claims that he never threatened Officer Cruz. *See id.* at 2. Lieutenant Concepcion "twisted" Delgado's words. *Id.* Lieutenant Concepcion and Officer Cruz both "conspired to trap" Delgado "on wrong charges right from the start." *Id.*

On March 11, 2020, a hearing was held on Delgado's two disciplinary reports. Delgado was found "not guilty" on the first disciplinary report (alleging Interfering with Safety and Security). *See id.* at 2, 19 (disciplinary report), 22 (summary report). But Delgado was found guilty on the second disciplinary report (alleging Threats). *See id.* at 13 (disciplinary report), 15

(summary report). Delgado received sanctions of 15 days loss of Risk Reduction Earned Credit ("RREC"), 60 days loss of commissary, and 60 days loss of telephone. *Id.* at 15.

In all, Delgado spent twenty days in the RHU,[4] where he experienced great discomfort. *Id.* at 4–5. In addition to the loss of RREC days and commissary and telephone privileges, Delgado lost his prison job and family visitation privileges. *See id.* at 7–8, 15. Delgado was also transferred to Corrigan, where he can no longer participate in certain programs that are offered only at MacDougall-Walker. *See id.* at 5, 7, 25.

On March 18, 2020, Delgado filed a grievance about a different disciplinary report that he apparently received on March 5, 2020. *See id.* at 24–25 (grievance). There is no indication regarding who issued Delgado the March 5 disciplinary report. That disciplinary report was apparently issued for making threats to Lieutenant Davis (not a defendant in this action). *See id.* at 25. Delgado believes that disciplinary report was issued as "retaliation" based on his incident with Officer Cruz. *See id.* On March 25, 2020, Delgado filed a grievance regarding Officer Cruz's issuing Delgado the first disciplinary report for "Interfering with Safety and Security" on February 23, 2020. *See id.* at 17–18 (grievance). Delgado alleged that Officer Cruz had issued him a false disciplinary report that resulted in his placement in the RHU. *See id.* As of May 5, 2020, Delgado had not received an answer to his grievances.[5] *See id.* at 4.

---

[4] Delgado's allegations concerning his confinement in the RHU and segregation are not clear. Delgado indicates that he was in the RHU from "2-23-2020 – 3-4-2023 until 3-17, 2020 [20 days until investigation completed]." Compl., Doc. No. 1, at 4. Later, Delgado states that he "served 17 days in seg[.]" *Id.* at 8. Finally, a summary report that Delgado attached to his complaint indicates that Delgado received a sanction of 15 days of punitive segregation from February 24, 2020 to March 10, 2020. *Id.* at 15. For purposes of this initial review order, I construe Delgado's complaint as alleging that he spent twenty days in the RHU.

[5] In light of the fact that Delgado's complaint is dated May 6, 2020 and was filed on June 5, 2020, I question whether Delgado had exhausted all of his administrative remedies before filing this complaint, as is required by the Prison Litigation Reform Act. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that a claim is not exhausted until the inmate complies with all administrative deadlines and procedures.). Nevertheless, because Delgado's allegations do not clearly establish that exhaustion is not complete, I consider the claims on the merits.

4

### III.   Discussion

Delgado's complaint is rather difficult to understand.  But, as best I can tell, Delgado alleges as follows.  First, with respect to the first disciplinary report, Delgado alleges that Officer Cruz targeted him by (1) issuing him the disciplinary report even though it was blatantly false and (2) placing him in the RHU.  Further, Delgado alleges that Lieutenant Concepcion refused to investigate Officer Cruz's conduct or to ensure an adequate disposition of those charges.  *See* Compl., Doc. No. 1, at 3, 5.  Second, with respect to the second disciplinary report, Delgado alleges that Lieutenant Concepcion issued the disciplinary report as a form of retaliation; Delgado's subsequent transfer to Corrigan was also part of that retaliation.  *See id*. at 6–7, 9.

To the extent Delgado complains of a constitutional violation regarding the issuance of false disciplinary reports, I note that a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  However, there are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right."  *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (cleaned up); *see also Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more [than being falsely accused], such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights."); *Shand v. Parsons*, 2020 WL 1989151, at *3 (D. Conn. Apr. 27, 2020) (same).  Thus, I will first consider

whether Delgado has plausibly alleged retaliation under the First Amendment and/or a violation of his right to due process under the Fourteenth Amendment.

### A.     First Amendment Retaliation

When prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a protected constitutional right, that inmate may sustain a section 1983 retaliation claim against those prison officials. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)) (cleaned up). District courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (cleaned up).

Protected speech or conduct includes filing a lawsuit, an administrative complaint, or a prison grievance. *See id.* at 294 ("[I]t is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (cleaned up); *Booth v. Comm'r of Corr.*, 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing

6

complaints and grievances is protected activity."). Although it is not a settled question,[6] some district courts in this Circuit have determined that verbal or oral complaints regarding the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim. *See McIntosh v. United States,* 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases). However, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)) (cleaned up).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). To allege causation, an inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)) (cleaned up). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Here, I will dismiss Delgado's retaliation claim as not plausible because Delgado has not

---

[6] *See Lenti v. Connecticut*, 2020 WL 4275600, at *11 (D. Conn. July 24, 2020) (describing the uncertainty).

7

alleged that he engaged in any speech or conduct protected by the First Amendment. Delgado asserts that Officer Cruz targeted him for no reason and that Lieutenant Concepcion retaliated against Delgado to cover for Officer Cruz. *See* Compl., Doc. No. 1, at 3, 5.[7] Delgado maintains that Officer Cruz and Lieutenant Concepcion conspired to "trap" him on "wrong charges right from the start." *Id.* at 2.

Viewed in the light most favorable to him, Delgado does not allege facts that plausibly suggest that he was retaliated against for speech or conduct protected under the First Amendment. Although Delgado alleges that he filed two grievances about the defendants, those grievances are irrelevant to the disciplinary reports and retaliation at issue in this case. That is because those grievances—which Delgado attaches to his complaint—were filed well after the dates of the alleged retaliation (February 24 and 25). More specifically, on March 18, 2020, Delgado filed a grievance regarding a disciplinary report concerning threats that Delgado apparently made to Lieutenant Davis (not a party to this action) and his transfer to Corrigan. *See* Compl., Doc. No. 1, at 24–25. On March 25, 2020, Delgado filed a grievance regarding the allegedly false first disciplinary report that Officer Cruz issued on February 23. *Id.* at 17–18. Thus, Delgado filed both of those grievances *after* the alleged retaliation in this case, which took place between February 24 and 25. Accordingly, there is no causal connection between the alleged retaliatory conduct by Officer Cruz and Lieutenant Concepcion (in February 2020) and the grievances that Delgado filed (in March 2020). Delgado's complaint does not hint at any

---

[7] Delgado does not explicitly say that Lieutenant Concepcion was "covering for" Officer Cruz, but it is a fair inference from his complaint. That is because Delgado makes mention of a "buddy system" in the DOC. *See* Compl., Doc. No. 1, at 3 ("[T]he State of Connecticut D.O.C. has what they call a 'buddy system.'"); *id.* at 5 ("LT Concepcion . . . retaliates against the Plaintiff 'as way of Buddy System.'"). Although Delgado does not define what he means by "buddy system," I take him to mean that he believes correctional staff informally "cover" for each other.

other protected speech or conduct that Delgado engaged in before February 23, 2020. In sum, Delgado's complaint fails to raise an inference that the alleged retaliatory conduct had any causal link to Delgado's engagement in an activity protected by the First Amendment, and so Delgado has not stated any plausible First Amendment claims of retaliation.[8]

### B. Fourteenth Amendment Procedural Due Process

Although not entirely clear, Delgado appears to bring a procedural due process claim against both defendants on the basis of Delgado's placement in the RHU after Officer Cruz issued Delgado the first disciplinary report on February 23. Delgado also appears to bring a due process challenge to the punitive sanctions that resulted from the second disciplinary report issued by Lieutenant Concepcion regarding Delgado's threats toward Officer Cruz. *See* Compl., Doc. No. 1, at 7.

As an initial matter, I note that Delgado complains about losing RREC as a sanction resulting from the disciplinary hearing regarding his second disciplinary report (threats). *See* Compl., Doc. No. 1, at 15. To the extent that Delgado brings a procedural due process challenge regarding that disciplinary hearing, his claim concerns "mixed sanctions," *i.e.*, "sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement." *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). In *Heck v. Humphrey*, the Supreme Court held that a section 1983 action seeking money damages for an allegedly unconstitutional conviction or imprisonment is not cognizable if a decision in favor of the

---

[8] Delgado's claim of retaliatory transfer is not plausible for the additional reason that he has not alleged facts suggesting that either Officer Cruz or Lieutenant Concepcion were involved in the decision to transfer him to Corrigan (where he was unable to participate in the same programs that he had participated in at MacDougall-Walker). *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (cleaned up).

plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 487 (1994) (cleaned up).

Since *Heck*, the Supreme Court has made clear that *Heck*'s favorable termination rule applies to section 1983 challenges to procedures used in disciplinary proceedings that deprived a prisoner of RREC. *See Peralta*, 467 F.3d at 103 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)). Further, the Second Circuit has held:

> [A] prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but* [] *he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*

*Id.* at 104. Thus, Delgado's procedural due process claim regarding his mixed sanctions (including the loss of his RREC) is barred by *Heck* because Delgado has not filed a notice indicating that he forgoes a challenge to his RREC sanction, which affects the duration of his confinement. However, Delgado also appears to challenge on due process grounds his administrative detention in the RHU arising from the first disciplinary report (written by Officer Cruz). Thus, I consider whether Delgado has alleged any liberty interest in this complaint.

The Fourteenth Amendment's Due Process Clause guarantees that States will not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Court must analyze a claim for a violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient.

10

*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In that analysis, courts must examine the actual punishment that an inmate received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

With respect to time limits for disciplinary confinement, *Sandin* held that a prisoner who was subjected to a disciplinary term of thirty days of confinement in restrictive housing did not sustain a deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process Clause. 515 U.S. at 486. Such confinement did not give rise to a liberty as an atypical and significant hardship because "[t]he regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487.

"[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). There is no "bright line rule that a certain period of [segregated] confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64. However, precedents in this Circuit do shed significant light on the question. Generally, a long period of segregation—such as more than 305 days—"is sufficiently atypical to trigger due process protections." *Ellerbe v. Jasion*, 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015). "Where the plaintiff was confined for an

11

intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (cleaned up). Accordingly, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis,* 576 F.3d at 133; *Kalwasinski v. Morse*, 201 F.3d 103, 107–08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship).

Here, Delgado's allegations do not suggest that he was subjected to "atypical and significant hardship." Although the complaint's allegations are not entirely clear, I have already explained that I construe Delgado's allegations liberally to allege that he was subjected to confinement in the RHU for twenty days. *See supra* n.4. Delgado alleges that, during his confinement in the RHU, he experienced great discomfort and lost his job, access to the commissary, phone, and family visits. *See id.* at 5, 7–8, 15.

Construing Delgado's allegations most broadly, Delgado has not alleged facts that suggest that he suffered from any atypical and significantly onerous conditions while in segregation. Twenty days is a relatively short period of segregation that does "not generally raise a liberty interest warranting due process protection." *Davis,* 576 F.3d at 133; *see also McLellan v. Chapdelaine*, 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (citing cases for that proposition); *Abrams v. Erfe*, 2018 WL 691714, at *13 (D. Conn. Feb. 2, 2018) (holding that 17-day confinement in segregation was not an "atypical and significant hardship," particularly in relation to plaintiff's 51-year sentence). Delgado is currently serving a five-year sentence. *See Inmate Information*, Conn. State Dep't of Corr., http://www.ctinmateinfo.state.ct.us/ (last visited

12

Aug. 21, 2020). Although Delgado's time in the RHU was no doubt unpleasant, it does not rise to the level of a constitutional violation. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (describing the conditions of a prisoner's placement in administrative segregation in a special housing unit as "doubtless unpleasant and somewhat more severe than those of general population," but affirming that "the degree of incremental harshness, endured for 101 days, is not an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484).

Similarly, inmates have no constitutionally protected liberty interests in assignment to a particular prison job, visitation, phone, or commissary privileges. *See, e.g.*, *McLellan*, 2017 WL 388804, at *4–5 (loss of commissary and visiting privileges); *Groomes v. Frazir*, 2017 WL 7410991, at *5 (D. Conn. Nov. 2, 2017) (prison job); *Warren v. Irvin*, 985 F. Supp. 350, 353 (W.D.N.Y. 1997) (phone). Thus, I conclude that Delgado has not alleged sufficient facts to show that his conditions of confinement "were so atypical compared to ordinary prison life as to give rise to a protected liberty interest, particularly in light of the relative brevity of that confinement." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 277 (N.D.N.Y. 2018) (dismissing the plaintiff's due process claim for failing to establish a liberty interest after being confined to the SHU for fourteen days without his "personal property, hygiene products, stamps, and commissary" and without a "functioning toilet or running water for four days"). I dismiss Delgado's procedural due process claims without prejudice.

      C.     <u>Eighth Amendment Deliberate Indifference</u>

Delgado alleges that Officer Cruz and Lieutenant Concepcion's conduct subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Although the Constitution

does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up). To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "the minimal civilized measure of life's necessities" or a "substantial risk of serious harm." *Id.* at 834 (cleaned up). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of merely negligent conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006). When evaluating a claim for failure to protect an inmate from harm or deliberate indifference to inmate safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (cleaned up).

Delgado does not plausibly allege an Eighth Amendment claim that he was deprived of a life necessity or subjected to a risk of serious harm. The alleged segregation and deprivations in this case (loss of phone, visits, commissary, and prison employment) do not amount to cruel and

unusual punishment as inhumane conditions of confinement. *See Bernier v. Sweet*, 2018 WL 1047103, at *3 (W.D.N.Y. Feb. 26, 2018) (normal conditions of segregation permitting only two showers per week did not constitute sufficient deprivation under Eighth Amendment); *Marrero v. Weir*, 2014 WL 4799228, at *3 (D. Conn. Sept. 26, 2014) (loss of phone and visitation privileges do not amount to sufficiently serious deprivation under Eighth Amendment); *Fonck v. Semple*, 2018 WL 4654700, at *5 (D. Conn. Sept. 27, 2018) (dismissing conditions of confinement claim grounded in denial of educational and job opportunities and eligibility for parole). Because Delgado has not alleged a sufficient deprivation to state a plausible claim of cruel and unusual punishment, I dismiss his Eighth Amendment claim.

        D.      <u>Fourth Amendment</u>

Although Delgado nowhere claims that his rights under the Fourth Amendment were violated, Delgado does recount that he was strip searched before being placed in the RHU. *See* Compl., Doc. No. 1, at 2. Because I construe Delgado's pleading most liberally, I will consider whether Delgado has raised a plausible Fourth Amendment claim.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Terry v. Ohio,* 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.") (cleaned up). The touchstone of the Fourth Amendment is reasonableness. *See United States v. Knights*, 534 U.S. 112, 118 (2001).

"[I]nmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 62 (2d Cir. 2016). In determining whether an isolated body search of an

15

inmate was reasonable, a court should consider four factors: "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Id.* at 58 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). A strip search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citing, *inter alia*, *Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992)). Accordingly, strip searches of prisoners are lawful when they are "reasonably related to legitimate security interests," a determination that is "peculiarly within the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (quoting *Bell*, 441 U.S. at 548) (cleaned up).

Here, Delgado alleges that after he was suspected of possessing drugs, he was strip searched to determine whether he had any contraband on his person before being placed in the RHU. *See* Compl., Doc. No. 1, at 2. Courts in this district have recently held that, "[p]ursuant to administrative prison policy, the rule that 'an inmate be strip-searched when he or she is placed in either administrative segregation or a restrictive housing unit is reasonable and valid.'" *Erfe*, 2018 WL 691714, at *10 (quoting *Holloway v. Dep't of Corr.*, 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013)). Although Delgado alleges that Officer Cruz had Delgado strip searched because of an improper motivation, Delgado pleads no facts that would support that allegation. Delgado's conclusory allegations that Officer Cruz's conduct constituted an abuse or misuse of power do not establish that the strip search lacked a legitimate penological purpose. *See* Compl., Doc. No. 1 at 2, 5, 6, 9; *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002)

(noting conclusory allegations or legal conclusions are insufficient to state a claim). Because Delgado has not alleged any facts raising an inference that the strip search was not reasonably related to a legitimate security interest—or that it was conducted in an unreasonable manner—I dismiss Delgado's Fourth Amendment claim.

## ORDER

For the foregoing reasons, I **dismiss without prejudice** Delgado's complaint. I will afford Delgado thirty (30) days from the date of this initial review order to amend his complaint to correct the deficiencies that I have identified. If Delgado files an amended complaint, he must include a specific request for relief, *i.e.*, money damages or some form of equitable relief. Delgado must also name in the caption all defendants against whom he makes claims.

I caution Delgado that if he has not exhausted all of his administrative remedies, his claims may be subject to dismissal on a defense motion to dismiss or motion for summary judgment. If Delgado has not fully exhausted a claim, he may pursue that claim by filing a new action after the claim is fully exhausted under the DOC administrative remedies procedures.

Finally, if Delgado seeks to bring a Fourteenth Amendment due process claim challenging the mixed sanctions imposed as a result of his February 25, 2020 disciplinary report for threats, Delgado must advise the court in writing, within thirty (30) days of this ruling's filing date, whether he waives for all time all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (*i.e.*, the forfeiture of the 15 days of RREC) in order to proceed with his claims challenging the disciplinary finding. Failure to file such a statement within the required time will constitute Delgado's refusal to waive those claims and will thus result in the dismissal of his Fourteenth Amendment due process claim.

It is so ordered.

Dated at Bridgeport, Connecticut this 21st day of August 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
