UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAUL DELGADO,  :  Plaintiff, : : | |
| v.    : : | Case No. 3:20-cv-787 (SRU) |
| LIEUTENANT CONCEPCION and  : OFFICER CRUZ,    :  Defendants.  : | |

## INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

Raul Delgado is a sentenced inmate in the custody of Connecticut's Department of Correction (the "DOC"), and he is currently confined at Garner Correctional Institution.[1] On June 5, 2020, Delgado, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1. Delgado alleged that two members of the correctional staff at MacDougall-Walker Correctional Institution ("MacDougall-Walker")—Lieutenant Concepcion and Officer Cruz (the "Defendants")—violated his rights under the First, Fourth,[2] Eighth, and Fourteenth Amendments to the United States Constitution. On August 21, 2020, I issued an initial review order dismissing Delgado's complaint for failure to state any plausible claims pursuant to section 1983. *See* Initial Review Order ("IRO"), Doc. No. 10, at 5–17. However, I afforded Delgado the opportunity to file an amended complaint to correct the deficiencies identified in the initial review order. *Id.* at 17.

---

[1] Although the docket reflects that Delgado is currently housed at the Corrigan-Radgowski Correctional Center, the DOC's website indicates that Delgado is now housed at Garner Correctional Institution. *See Inmate Information*, Conn. State Dep't of Corr., http://www.ctinmateinfo.state.ct.us/ (last visited Dec. 15, 2020). I remind Delgado that anytime he is proceeding *in forma pauperis* and changes his address during the pendency of litigation, he must notify the court. *See* Order, Doc. No. 7; D. Conn. L. Civ. R. 83.1(c)2. Failure to do so can result in dismissal of the case.

[2] Although Delgado did not explicitly mention the Fourth Amendment, I construed Delgado's complaint as alleging a violation of his rights under the Fourth Amendment. *See* Initial Review Order, Doc. No. 10, at 1 n.1.

1

On September 14, 2020, Delgado filed an amended complaint. *See* Am. Compl., Doc. No. 11. Delgado's amended complaint again names Lieutenant Concepcion and Officer Cruz as defendants and seeks money damages and injunctive relief. *See id.* For the following reasons, I **dismiss** Delgado's amended complaint because Delgado does not allege plausible claims.

## I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Background[3]

---

[3] I take the facts from Delgado's complaint, his amended complaint, and from the documents attached to and incorporated by reference into Delgado's complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (holding that, for purposes of a Rule 12(b) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (cleaned up); *Davis v. Giles*, 2018 WL 2172717, at *1 (D. Conn. May 18, 2018) (considering the complaint, "documents either attached to the complaint or incorporated into it by reference," and "matters of which a court may take judicial notice") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (cleaned up).

On February 23, 2020, while Delgado was housed at MacDougall-Walker, Officer Cruz claimed that Delgado was in possession of drugs and ordered Delgado to show him what was in his pocket. *See* Compl., Doc. No. 1, at 1. Delgado showed Officer Cruz four packets of sugar. *See id.* Delgado said he had nothing else in his pocket and continued on his way. *See id.* at 2. A code was then called, and Delgado was cuffed and sent to the Restricted Housing Unit (the "RHU"). *See id.*

Before entering the RHU, Delgado was strip searched. *See id.* The strip search revealed no drugs; instead, it revealed only the four packets of sugar. *See id.* Still, Officer Cruz issued Delgado a disciplinary report for "Interfering with Safety and Security." *See id.* at 2, 19 (disciplinary report); Am. Compl., Doc. No. 11, at ¶ 1. Delgado was then held in the RHU on administrative detention. *See* Compl., Doc. No. 1, at 19–21. Delgado believes that Officer Cruz targeted him for no reason. *Id.* at 3.

On February 24, 2020, while Delgado was still confined in the RHU on administrative detention, Lieutenant Concepcion conducted an interview with Delgado in the RHU interview room. *See* Compl., Doc. No. 1, at 2, 13 (disciplinary report). According to Delgado, during that interview Delgado expressed his view that it was wrong to place him in administrative detention for having four packets of sugar. *See id.* But according to Lieutenant Concepcion, during that interview Delgado "began making serious threats towards the safety and well-being of Officer Cruz." *Id.* at 13. Thus, the following day—February 25—Lieutenant Concepcion issued Delgado a second disciplinary report for "Threats." According to Delgado, Lieutenant Concepcion's issuing him the second disciplinary report amounted to retaliating against Delgado for exercising his First Amendment rights because the disciplinary report falsely charged

3

Delgado with making a direct threat to Officer Cruz's life. *See* Am. Compl., Doc. No. 11, at ¶¶ 2–3; Compl., Doc. No. 1, at 13.

On March 11, 2020, a hearing was held on Delgado's two disciplinary reports. *See* Compl., Doc. No. 1, at 13–16, 19–23. Delgado was found "not guilty" on the first disciplinary report (alleging Interfering with Safety and Security). *See* Am. Compl., Doc. No. 11, at ¶¶ 1, 4; Compl., Doc. No. 1, at 19–20 (disciplinary report), 22–23 (hearing). But Delgado was found "guilty" on the second disciplinary report (alleging Threats). *See* Am. Compl., Doc. No. 11, at ¶ 5; Compl., Doc. No. 1, at 13–14 (disciplinary report), 15–16 (hearing). The hearing reports reflect that Delgado received sanctions of 15 days' punitive segregation (which had already been served by that point),[4] 15 days' loss of Risk Reduction Earned Credit ("RREC"), 60 days' loss of commissary, and 60 days' loss of telephone privileges. *Id.* at 15.

Delgado alleges that during his 17-day[5] confinement in the RHU he lost non-contact visitation privileges, was unable to participate in certain programs, and was later transferred to a prison where he cannot have contact visits with his family. *See* Am. Compl., Doc. No. 11, at ¶ 6. Delgado suffers from cancer and claims that his treatment was "held up" during his 17-day confinement in the RHU. *Id.* at 1–2.

---

[4] Apparently, the time Delgado spent in the RHU between February 23 and March 11 was both an administrative detention and an *ex post* sanction of punitive segregation. That is, after the first disciplinary report was issued to Delgado on February 23, 2020, Delgado was put into the RHU on administrative detention. *See* Compl., Doc. No. 1, at 19, 21. It appears that Delgado remained in the RHU on administrative detention until the disciplinary hearing on March 11. There, Delgado was found guilty on the second disciplinary hearing and given 15 days of punitive segregation as a sanction. Just below that sanction, the hearing officer noted "2/24/20 → 3/10/2020." *Id.* at 15. Thus, Delgado had apparently *already* served those 15 days of punitive segregation as administrative detention.

[5] As described in my Initial Review Order, Delgado's allegations concerning the length of his confinement in punitive segregation/administrative detention are not entirely consistent. *See* IRO, Doc. No. 10, at 4 n.4. Although in my Initial Review Order I construed that uncertainty in Delgado's favor and assumed that he had spent 20 days in the RHU, it seems clear upon further review that Delgado spent 17 days in the RHU—that is, the time between his first disciplinary report (Feb. 23, 2020) and his disciplinary hearing (Mar. 11, 2020), Thus, I now construe Delgado's amended complaint as alleging that he spent 17 days in the RHU.

4

**III.   Discussion**

Delgado's amended complaint is less detailed and asserts fewer claims than Delgado's initial complaint. However, in the interest of completeness, I will construe Delgado's complaint and amended complaint in the light most favorable to him to assert (1) a Fourth Amendment claim regarding the strip search upon his entry into the RHU, (2) a First Amendment retaliation claim regarding Delgado's two disciplinary reports, (3) a Fourteenth Amendment Procedural Due Process claim regarding his 17-day confinement in the RHU, (4) an Eighth Amendment claim regarding the alleged lapse in Delgado's cancer treatments during his 17-day confinement in the RHU, and (5) a claim regarding Delgado's right of access to the courts.

    A.   <u>Fourth Amendment</u>

In his initial complaint, Delgado recounted his strip search upon being admitted to the RHU. *See* Compl., Doc. No. 1, at 2. Delgado does not mention his strip search in his amended complaint. In my initial review order, I addressed Delgado's Fourth Amendment strip search claim and explained why it was not plausible. *See* IRO, Doc. No. 10, at 15–17. Thus, to the extent that Delgado re-asserts his Fourth Amendment claim, it is dismissed for the same reasons as set forth in my initial review order.

    B.   <u>First Amendment Retaliation</u>[6]

---

[6] In his initial and amended complaints, Delgado claims that the two disciplinary reports written against him were false. *See* Compl., Doc. No. 1, at 1–2; Am. Compl., Doc. No. 11, at ¶¶ 1, 3. I do not address those claims separately. As I explained in my initial review order, a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, there are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (cleaned up); *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights."); *Shand v. Parsons*, 2020 WL 1989151, at *3 (D. Conn. Apr. 27, 2020) (same). As I explain again in this order, Delgado

5

To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)) (cleaned up).  District courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (cleaned up).  Consequently, prisoner retaliation claims must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.* (cleaned up).

With respect to the first disciplinary report, Delgado alleges that Officer Cruz targeted him for no reason.  *See* Compl., Doc. No. 1, at 2; Am. Compl., Doc. No. 11, at ¶ 1.  With respect to the second disciplinary report, Delgado alleges that Lieutenant Concepcion retaliated against him for speaking freely.  *See* Am. Compl., Doc. No. 11, at ¶ 2–3.  Delgado made the same allegations in his initial complaint, and I dismissed them as not plausible because Delgado had alleged no causal connection between any protected speech and an adverse action.  *See* IRO, Doc. No. 10, at 6–9.  More particularly, the only protected speech that Delgado mentioned in his initial complaint were two grievances Delgado filed on March 18, 2020 and March 25, 2020. *See id.* at 4, 8; *see also* Compl., Doc. No. 1, at 17–18, 24–25.  Because those grievances were filed well after the dates of the alleged retaliation (February 23 and 25, 2020), there could be no

---

qualifies for neither of those exceptions because he has plausibly alleged neither a First Amendment retaliation claim nor a Fourteenth Amendment procedural due process claim.

causal connection between the grievances and the disciplinary reports. *See* IRO, Doc. No. 10, at 8.

In my initial review order, I noted that "Delgado's complaint does not hint at any other protected speech or conduct that Delgado engaged in before February 23, 2020." *Id.* at 8–9. Delgado's amended complaint does not cure that deficiency. In his amended complaint, Delgado mentions that his protected speech "refers to filing a lawsuit." Am. Compl., Doc. No. 1, at ¶ 7(A). Certainly, filing a lawsuit is protected speech. *See Espinal*, 558 F.3d at 129. But Delgado alleges no facts regarding any lawsuit that he filed against the Defendants—or otherwise—before February 23, 2020. *See* Am. Compl., Doc. No. 11, at ¶ 7(A). Thus, Delgado has not pleaded facts that—even inferentially—support a First Amendment retaliation claim. Delgado's First Amendment retaliation claims are still implausible and must be dismissed.[7]

### C.    Fourteenth Amendment Procedural Due Process

In my initial review order, I dismissed Delgado's Fourteenth Amendment procedural due process claims. *See* IRO, Doc. No. 10, at 9–13. In his amended complaint, Delgado re-asserts the same allegations. *See* Am. Compl., Doc. No. 11, at ¶¶ 5–6. Again, I dismiss Delgado's Fourteenth Amendment procedural due process claims in their entirety.

Delgado challenges his placement in the RHU after he received his first disciplinary report. The Fourteenth Amendment's Due Process Clause guarantees that States will not "deprive any person of life, liberty, or property, without due process of law." U.S Const. amend.

---

[7] As I previously explained in my initial review order, if Delgado asserts a claim of retaliatory transfer, that claim is not plausible for the additional reason that Delgado has not alleged facts suggesting that either Officer Cruz or Lieutenant Concepcion were involved in the decision to transfer Delgado. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (cleaned up); *see also* IRO, Doc. No. 10, at 9 n.8.

XIV.  The Court must analyze a claim for a violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State in making that deprivation were constitutionally sufficient.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In that analysis, courts must examine the actual punishment that an inmate received, as well as the conditions and duration of the punishment.  *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  I have already explained in detail why, based on the facts alleged in his initial complaint, Delgado cannot maintain a Fourteenth Amendment procedural due process claim based on his 17-day confinement in the RHU.  *See* IRO, Doc. No. 10, at 10–13.

In his amended complaint, Delgado has alleged one further fact that requires renewed attention:  Delgado now claims that during his 17-day confinement in the RHU his cancer treatment was "held up."  *See* Am. Compl., Doc. No. 11, at 1–2.  Claims of medical deprivation "may properly be considered as part of the liberty interest analysis under *Sandin*."  *LaBounty v. Kinkhabwala*, 2 F. App'x 197, 201 (2d Cir. 2001); *see also Martinaj v. Uhler*, 2019 WL 652251, at *9–10 (N.D.N.Y. Feb. 15, 2019).  Although Delgado's allegation lacks any detail, I will construe Delgado's complaint liberally to suggest that he has was deprived of a protected liberty interest resulting from a 17-day lapse in his cancer treatment as a result of his placement in the

8

RHU. Thus, I proceed to step two of the procedural due process analysis. Specifically, I consider whether the procedures followed by the State were constitutionally sufficient.

When evaluating the processes used in prison disciplinary and administrative decision making, courts must be "mindful of the context," and remember "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608–09 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)). The level of procedural protection that the Constitution requires varies depending on the type of confinement. *See Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For an administrative confinement, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Those procedural steps "must occur within a reasonable time following an inmate's transfer" into administrative confinement. *See id.* at 476 n.8; *see also Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009).

In contrast, for a disciplinary confinement, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (cleaned up). That standard, however, "is extremely tolerant" and can be satisfied based on

"*any* evidence in the record" supporting the disciplinary ruling.  *Girard v. Chuttey*, 826 F. App'x 41, 46 (2d Cir. 2020) (quoting *Sira*, 380 F.3d at 69) (cleaned up).

Delgado's 17-day confinement in the RHU apparently served *both* as an administrative detention *and* as an *ex post* sanction of punitive segregation resulting from being found guilty on the second disciplinary ticket.  *See supra* n.4.  Thus, I will examine the standards both for administrative and disciplinary placements.  The DOC provided adequate procedures under both standards.  Assuming first that Delgado's 17-day confinement in the RHU was an administrative detention, the DOC needed to give Delgado, within a reasonable time, some notice of the charges against him and an opportunity to present his views to a prison official who would decide whether to transfer Delgado out of administrative detention.  *See Hewitt*, 459 U.S. at 476 & n.8; *see also McClendon v. Murphy*, 2015 WL 3886320, at *3 (D. Conn. June 23, 2015).  Here, Delgado was given notice of the charges against him:  On February 23, he was given copies of the first disciplinary report issued against him and of the RHU status order indicating that he was being placed in administrative detention.  *See* Compl., Doc. No. 1, at 19–21.  Delgado also had an opportunity to present his views to Lieutenant Concepcion on February 24 in an interview in the RHU.  *See id.* at 13–14.  Thus, if Delgado's 17-day confinement in the RHU was purely an administrative detention, the DOC followed constitutionally adequate procedures in imposing that confinement.

Next, I assume that Delgado's 17-day confinement in the RHU was an *ex post* punitive segregation issued as a sanction for being found guilty on his second disciplinary ticket.  *See* Compl., Doc. No. 1, at 15–16 (noting that Delgado would be sanctioned 15 days of punitive segregation from "2/24/20 → 3/10/2020").  With respect to the disciplinary hearing, Delgado

was entitled to (1) advance written notice of the charges against him, (2) a reasonable opportunity to call witnesses and present evidence, (3) a fair and impartial hearing officer, and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *See Sira*, 380 F.3d at 69. The materials that Delgado himself attached to his complaint indicate that all those procedural safeguards were followed. For instance, both the first and second disciplinary reports contain sections confirming that they were delivered to Delgado. *See* Compl., Doc. No. 1, at 13 (second disciplinary report), 19 (first disciplinary report). Further, Delgado was given a reasonable opportunity to call witnesses and present evidence: Delgado called at least three witnesses and himself made a statement. *See id.* at 15–16, 22–23. Delgado offers no allegations to suggest (even inferentially) that the hearing officer was biased. In fact, the hearing officer found Delgado not guilty on the first disciplinary report. *See id.* at 22–23. Finally, Delgado was provided a written statement of the disposition, which—although relatively cursorily—contained a summary of Delgado's statements and explained that the decision was based on the "evidence presented and testimony given." *See id.* at 15–16, 22–23. Thus, Delgado's Fourteenth Amendment procedural due process claim regarding his 17-day confinement in the RHU is dismissed.

In my initial review order, I noted that Delgado's challenge to the non-RREC sanctions he received as a result of being found guilty in his second disciplinary report—15 days' punitive segregation, 60 days' loss of commissary, and 60 days' loss of telephone privileges, *see* Compl., Doc. No. 1, at 15—appeared barred by the "*Heck* rule." *See* IRO, Doc. No. 10, at 9–11; *see also Heck v. Humphrey*, 512 U.S. 477, 487 (1994). That was because Delgado had received "mixed sanctions," *i.e.*, "sanctions that affect both (a) the duration of his imprisonment and (b) the

11

conditions of his confinement." *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). I noted that a prisoner subject to such mixed sanctions may proceed with a section 1983 claim challenging the conditions of his confinement only "if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement," which here is the loss of RREC. IRO, Doc. No. 10, at 10 (quoting *Peralta*, 467 F.3d at 104). Because Delgado had not filed such a notice, I considered his claim barred by *Heck*. *Id.* But I allowed Delgado to submit that notice within 30 days of my ruling. *Id.* at 17. Delgado has not submitted such a notice, and so he has waived his Fourteenth Amendment due process claim insofar as it regards the non-RREC sanctions imposed on Delgado as a result of his being found guilty of the second disciplinary report.

Even if Delgado had not waived it, his Fourteenth Amendment procedural due process challenge to the non-RREC portions of his sanctions would fail. I have already explained why the *ex post* sanction of 15 days in punitive segregation did not violate the Fourteenth Amendment. And, as described in my initial review order, the other non-RREC sanctions—60 days' loss of phone privileges and 60 days' loss of commissary privileges—do not involve protectable liberty interests. *See* IRO, Doc. No. 10, at 13 (citing *McLellan v. Chapdelaine*, 2017 WL 388804, at *4–5 (D. Conn. Jan. 27, 2017); *Warren v. Irvin*, 985 F. Supp. 350, 353 (W.D.N.Y. 1997)).

Delgado's challenge to his RREC sanction also fails for two independent reasons. First, Delgado has brought his challenge pursuant to the wrong statute. As a state prisoner seeking relief in federal court, Delgado cannot challenge the duration of his confinement in a section 1983 action; he can do so only by petition for a writ of habeas corpus. *See Preiser v. Rodriguez*,

12

411 U.S. 475, 487–90 (1973) (holding that a state prisoner challenging the length of his confinement must do so by a habeas petition, not a section 1983 suit); *see also Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed."); *Green v. Riffo*, 2019 WL 2302412, at *9 (D. Conn. May 29, 2019) (noting that "[i]f an inmate earns RREC, the application of RREC to an inmate's sentence affects the overall duration of the inmate's confinement" and that "in general, a claim regarding the length of one's sentence must be brought as a habeas claim").

Second, even if Delgado had properly presented his challenge to his RREC sanction, it would fail. As several courts have noted, a Connecticut state prisoner has no liberty interest in RREC. *See, e.g.*, *Petaway v. Osden*, 2019 WL 1877073, at *3–7 (D. Conn. Apr. 26, 2019) (explaining that state inmate's liberty interest in sentence-reduction credit must come from state law and that Connecticut state law made clear that RREC conferred no liberty interest); Conn. Gen. Stat. § 18-98e (explaining that inmates "*may* be eligible to earn risk reduction credit . . . at the discretion of the Commissioner of Correction . . . ") (emphasis added); *Perez v. Comm'r of Correction*, 326 Conn. 357, 370–72 (2017) (noting that inmates have no constitutionally protected liberty interest in RREC because the award of RREC is discretionary); *Whistnant v. Comm'r of Corr.*, 199 Conn. App. 406, 423–26 (2020); *Riffo*, 2019 WL 2302412, at *10; *Vega v. Rell*, 2012 WL 1298678, at *2 (D. Conn. Apr. 16, 2012). Thus, I dismiss Delgado's Fourteenth Amendment procedural due process claim in its entirety.

### D. Eighth Amendment Deliberate Indifference

In my initial review order, I dismissed Delgado's Eighth Amendment claim because he

13

had not alleged facts suggesting that he had been deprived of a life necessity or subjected to a substantial risk of serious harm.  *See* IRO, Doc. No. 10, at 13–15.  That analysis still holds.  However, as already described, in his amended complaint, Delgado includes an allegation that he was deprived of cancer treatment while in the RHU.  Thus, I consider whether, based on that new allegation, Delgado has plausibly alleged a violation of the Eighth Amendment based on deliberate indifference to his medical needs.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether "manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976) (cleaned up).  However, "not every lapse in medical care is a constitutional wrong."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  To succeed on such a claim, an inmate must demonstrate both an objective and subjective element.

To meet the objective element, an inmate must allege that the conditions to which he was subjected "pose an unreasonable risk of serious damage to his health" and that the alleged deprivation of adequate medical care was "sufficiently serious."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Salahuddin*, 467 F.3d at 279.  To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent—that is, subjective recklessness.  *See Salahuddin*, 467 F.3d at 280.  To be subjectively reckless, the defendant prison official must have known of and disregarded "an excessive risk" to plaintiff's health or safety.  *See id.*; *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).  To know of and disregard an excessive risk to the plaintiff's health or safety, the defendant must be actually "aware of facts

14

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Salahuddin*, 467 F.3d at 281 (noting that the "charged official must be subjectively aware that his conduct creates" a substantial risk of serious harm).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (cleaned up).

Delgado's Eighth Amendment claims fails for two independent reasons. First, Delgado has not alleged any facts to raise an inference that Officer Cruz or Lieutenant Concepcion was personally involved in the failure to provide Delgado with medical care during his 17 days in the RHU. Because Delgado has not alleged the Defendants' personal involvement, he cannot assert an Eighth Amendment deliberate indifference claim against them. Second, even if Delgado had alleged the Defendants' personal involvement, Delgado provides no facts to support an inference that the Defendants—or any DOC official—recklessly deprived him of cancer treatment. Thus, to the extent that Delgado alleges an Eighth Amendment claim for deliberate indifference, I dismiss it.

### E. Access to the Courts[8]

---

[8] The precise origin of the Constitution's right of access to the courts is unclear, but the Supreme Court has indicated that the right may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition

Delgado's complaint alleges that he was deprived of his right to petition the courts due to Officer Cruz's allegedly false disciplinary report. *See* Am. Compl., Doc. No. 11, at ¶ 7. To prevail on a claim for denial of access to the courts, the plaintiff must show that a defendant's actions were deliberate and malicious, and that the actions caused him to suffer an actual injury. *See Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010). To demonstrate an actual injury, the plaintiff must show that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir. 1997). However, a delay in the inmate's ability to work on a legal action or communicate with the courts is not a sufficient basis for a constitutional violation. *Galarza v. Semple*, 2018 WL 3935042, at *2 (D. Conn. Aug. 16, 2018). Delgado alleges no facts suggesting that Officer Cruz's conduct caused him any injury related to his right of access to the courts, such as a missed filing date or inability to present a claim to the court. Thus, Delgado's claim based on an alleged violation of his constitutional right to access the courts is dismissed as not plausible under 28 U.S.C. § 1915A(b).

    F.    <u>Official Capacity Claims</u>

In his amended complaint, Delgado seeks injunctive relief. More particularly, he asks that I order that all false charges against him be removed from his file and that he be transferred to another prison where he can participate in certain programming. *See* Am. Compl., Doc. No. 11, at 4. Thus, insofar as it requests injunctive relief, I construe Delgado's amended complaint

---

Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, or the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

as alleging claims against the Defendants in their official capacities. When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 677 (1974); *Ex parte Young*, 209 U.S. 123, 155–56 (1908). Thus, a "plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from [ongoing] violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). As discussed above, Delgado has not alleged any plausible constitutional violations in this case—let alone any ongoing violations. Thus, I dismiss his claims for injunctive relief against the Defendants in their official capacities.[9]

## IV. Conclusion

For the foregoing reasons, I **dismiss** Delgado's amended complaint. Because he has already had an opportunity to amend his complaint but has failed to correct the previously identified deficiencies, Delgado will not be afforded another opportunity to file an amended complaint. The clerk is instructed to close this case and to send a copy of this order to Delgado at Garner Correctional Institution, which is his current place of incarceration.

---

[9] Although not discussed above, to the extent that Delgado requests a transfer to another prison facility, I cannot grant that request. The DOC Commissioner ordinarily has discretion to determine the appropriate housing and classification for an inmate. *See McKinnon v. Chapdelaine*, 2013 WL 951324, at *1 (Conn. Super. Ct. Feb. 13, 2013); *see also* Conn. Gen. Stat. § 18–86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility . . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action."); *Olim v. Wakinekona,* 461 U.S. 238, 247–48 (1983) (holding that prisoners do not have a constitutionally protected right to be confined in any particular correctional facility or any particular state); *but see Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

So ordered.

Dated at Bridgeport, Connecticut this 16th day of December 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge